IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| INTERPLAN ARCHITECT, INC., | § § | |
| Plaintiff, | § § | |
| v. | § § § | Civil Action No. 4:08–cv–03181 |
| C.L. THOMAS, INC., MORRIS AND ASSOCIATES, ENGINEERS, INC., and HERMES ARCHITECTS, | § § § § | |
| Defendants. | § § | |

## MEMORANDUM AND ORDER

The Court has before it two Motions of Defendant Morris and Associate, Engineers, Inc. ("Morris"): a Motion to Dismiss Count Two of Plaintiff Interplan Architects, Inc.'s First Amended Complaint. (Doc. No. 60), and a Motion to Compel Discovery from Plaintiff (Doc. No. 55). After considering the parties' filings, oral arguments of counsel, and the applicable law, this Court finds and holds that Morris's Motion to Dismiss should be denied and its Motion to Compel should be granted in part and denied in part.

I. BACKGROUND [1]

Plaintiff has sued Defendants under the Federal Copyright Act for copyright infringement, providing false copyright management information, and removing or altering copyright management information. More specifically, Plaintiff, in its First Amended Complaint ("Complaint"), alleges that Defendant C.L. Thomas, Inc. ("C.L.

---

[1] These facts were generated from the allegations in Plaintiff's First Amended Complaint (Doc. No. 54), which, for purposes of the Motion to Dismiss, this Court accepts as true. *See Frame v. City of Arlington*, 575 F.3d 432, 434 (5th Cir. 2009).

1

Thomas") misused and misappropriated architectural documents prepared by Plaintiff by sharing them with Defendants Morris and Hermes Architects ("Hermes").

Plaintiff's business involves architectural planning, architectural design, and preparation of architectural construction documents, including but not limited to architectural site plans, architectural floor plans, architectural exterior elevations, interior designs, and construction documents ("Architectural Documents"). Various aspects of these documents are copyrighted. According to its Complaint, Plaintiff is hired on a project-by-project basis; it therefore provides its clients with Architectural Documents in connection with a specific project. Plaintiff claims that it is the author and owner of these Architectural Documents and that each document is an original work that is copyrightable or has been copyrighted. In addition, Plaintiff claims that it gives notice to each client that all Architectural Documents prepared in connection with that client's project are the sole property of Plaintiff.

C.L. Thomas operates Speedy Stop Food Stores ("Stores"). Between 2003 and 2005, C.L. Thomas retained Plaintiff to design and prepare Architectural Documents for several of their new stores. In 2003 and 2004, officers of C.L. Thomas requested that Plaintiff provide them with electronic copies of various Architectural Documents in order to allow them to make minor changes to the floor plans and to maintain copies for their records. Plaintiff provided the requested electronic Architectual Documents as CAD files in electronic format on a computer-readable disk. Between 2006 and 2008, Plaintiff learned that C.L. Thomas hired Morris and Hermes to perform the architectural engineer design for at least six additional Stores ("Infringing Stores"). They allege that C.L. Thomas wrongfully provided both Morris and Hermes with Plaintiff's Architectural

2

Documents to perform the architectural design for these additional stores. Plaintiff further alleges that, as part of the commission of copyright infringement, Defendants created Infringing Architectural Documents by intentionally removing or altering the copyright management information provided in physical and/or electronic copies of Plaintiff's Architectural Documents. Plaintiff's Complaint asserts claims against Morris for copyright infringement under 17 U.S.C. Section 501(a), violation of integrity of copyright management information under 17 U.S.C. Section 1202, and trade secret misappropriation under Texas law.

## II.   MOTION TO DISMISS

Morris now moves to dismiss Count Two of Plaintiff's Complaint for violation of the integrity of copyright management information pursuant to Federal Rule of Civil Procedure 12(b)(6). Morris claims that the facts of the case do not support a cause of action under 17 U.S.C. Section 1202, and that Plaintiff fails sufficiently to state a claim upon which relief can be granted under the Digital Millennium Copyright Act ("DCMA").

### A.   Legal Standard

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, a court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief

3

above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ---, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* (citing *Twombly*, 550 U.S. at 556).

### B. Facts Alleging Copyright Management Information

Morris first claims that Plaintiff has failed to allege sufficient facts to support its claim that its drawings contain "copyright management information" under the DCMA.[2]

---

[2] The definition of copyright management information, as provided in 17 U.S.C. Section 1202(c) is as follows: "As used in this section, the term 'copyright management information' means any of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form, except that such term does not include any personally identifying information about a user of a work or of a copy, phonorecord, performance, or display of a work:

**(1)** The title and other information identifying the work, including the information set forth on a notice of copyright.

**(2)** The name of, and other identifying information about, the author of a work.

**(3)** The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.

**(4)** With the exception of public performances of works by radio and television broadcast stations, the name of, and other identifying information about, a performer whose performance is fixed in a work other than an audiovisual work.

**(5)** With the exception of public performances of works by radio and television broadcast stations, in the case of an audiovisual work, the name of, and other identifying information about, a writer, performer, or director who is credited in the audiovisual work.

**(6)** Terms and conditions for use of the work.

**(7)** Identifying numbers or symbols referring to such information or links to such information.

**(8)** Such other information as the Register of Copyrights may prescribe by regulation, except that the Register of Copyrights may not require the provision of any information concerning the user of a copyrighted work."

In its Complaint, Plaintiff identifies, as its copyright management information, the logo and scope of document information attached as Exhibit C. (Pl. Compl. ¶ 17.) According to Morris, Plaintiff's pleadings are unclear as to what the copyright management information consists of.

The Court finds no such ambiguity in Plaintiff's pleadings. Plaintiff plainly states that Exhibit C of the Complaint is illustrative of the copyright management information that Plaintiff included in the documents provided to C.L. Thomas. Thus, the information displayed in Exhibit C, most notably the store identifier, company logo, and scope of document information, is the copyright management information. This information comports with the definition in Section 1202 because it includes "the title and other information identifying the work" (§ 1202(a)(1)); "the name of, and other identifying information about , the author of the work" (§ 1202(a)(2)); "the name of, and other identifying information about, the copyright owner of the work"(§ 1202(a)(3)); and "terms of conditions for use of the work"( § 1202(a)(6)). Thus, the Court finds and holds that the Complaint alleges facts that are more than sufficient to support the existence of copyright management information.

### C. Formal Copyright Notice

Morris also argues that Plaintiff's claim fails because Exhibit C of the Complaint includes no copyright notice under 17 U.S.C. Section 401(b).[3] This argument presumes that, in order to have a claim under 17 U.S.C. Section 1202, there must be a notice of

---

[3] Notice of copyright consists of the following three elements: 1) the symbol © (the letter C in a circle), or the word "Copyright", or the abbreviation "Copr."; and (2) the year of first publication of the work; in the case of compilations, or derivative works incorporating previously published material, the year date of first publication of the compilation or derivative work is sufficient; and (3) the name of the owner of copyright in the work, or an abbreviation by which the name can be recognized, or a generally known alternative designation of the owner. 17 U.S.C.A. § 401.

copyright in the information comprising copyright management information. The Court finds no such requirement. Section 1202(c)(1) lists "information set forth in a notice of copyright" among informational items, any of which can comprise copyright management information. *See* 17 U.S.C. 1202(c) (stating "'copyright management information' means *any* of the following information . . . ." )(emphasis added). That a formal notice of copyright, if present, is included in the copyright management information does not render it a requirement. Nothing in the definition of copyright management information, or any other statutory provision, indicates that, in order to sustain a claim for relief under Section 1202, there must be a showing that the notice elements of 17 U.S.C. Section 401 have been met. As discussed above, the information identified by Plaintiff as copyright management information meets the statutory definition, with or without statutory notice of copyright. Therefore, Morris's argument fails.

D. **Application of DMCA**

Finally, Morris asserts that Plaintiff has failed to state a claim for relief under the DCMA. This argument is one addressing the reach and scope of the DCMA. Morris first contends that the DMCA does not reach architectural documents. The Court finds this argument unavailing. First, the limitations on the rights of owners of copyrighted architectural works are explicitly stated in 17 U.S.C. Section 120. Notably, this provision says nothing about copyright management information. Secondly, Section 1202 contains no exceptions for architectural works. Morris contends that, although there is no Fifth Circuit or Southern District of Texas precedent regarding the application of the DCMA to architectural works, extending the statute's reach to these works would be ill-advised.

However, Morris fails to explain why including architectural works in the DCMA would be an extension of any kind. Indeed, absent any explicit indication within Section 1202 that architectural works, which are inarguably subject to copyright protections, are exempt from its provisions, it is incumbent upon Morris to show why this Court should nonetheless find that architectural documents are so excluded. Morris fails to make such a showing. Even assuming the truth of Morris's contention that the DMCA is typically applied in cases involving products such as encrypted DVDs and electronic books, this does not mandate that architectural documents cannot and should not be included within the statute's reach.

Morris further argues that Plaintiff fails to allege that a technological process was used for placement and/or removal of copyright management information as required by the DMCA. First, this Court notes that the definition of copyright management information does not require any specific technological process or measure. In fact, Section 1202(c) defines copyright management information as connected to "copies or phonorecords of a work or performance or displays of a work, *including in digital form . . . .*"(emphasis added). It is apparent from this language that the statute contemplates applicability to non-digital works as well. Furthermore, Section 1202 as a whole does not state that its provisions regarding removal or alteration of copyright management information are limited to specific technological measures.

Morris correctly points out that few cases have had to deal with the issues of what type of works and what copyright information are contemplated and covered by the DMCA. There is virtually no law within the Fifth Circuit, or even within the Southern District of Texas on this matter. The primary cases cited by Morris in support of its

7

argument that the DCMA does not contemplate coverage are *Textile Secrets Int'l v. Ya-Ya Brand, Inc.*, 524 F. Supp. 2d 1184 (C.D. Cal. 2007), and *IQ Group, Ltd v. Wiesner Publishing LLC*, 409 F. Supp. 2d 587 (D.N.J. 2006). In both cases, the courts conducted a thorough analysis of the DCMA's legislative history. The *Textile Secrets* court concluded that

> [w]hile the Court does not attempt in this decision to define the precise contours of the applicability of § 1202, the Court nevertheless cannot find that the provision was intended to apply to circumstances that have no relation to the Internet, electronic commerce, automated copyright protections or management systems, public registers, or other technological measures or processes as contemplated in the DMCA as a whole. In other words, although the parties do not dispute that the FEATHERS fabric contained TSI's copyright information, there are no facts showing that any technological process as contemplated in the DMCA was utilized by plaintiff in placing the copyright information onto the FEATHERS fabric, or that defendants employed any technological process in either their removal of the copyright information from the design or in their alleged distribution of the design.

*Id.* at 1201-1202. In other words, the court found that, because the DMCA as a whole is targeted at technological measures and processes, Section 1202, as part of the overall DMCA statutory scheme, must also be applicable only to those situations in which a technological process is used in either the placement or unlawful removal of the copyright management information. In doing so, the court pointed out that a literal reading of 1202(c) would, in effect, give Section 1202 "limitless scope that would be applicable to all works bearing copyright information as listed in [Section 1202(c)]." *Id.* at 1195. Notably, both *Textile Secrets* and *IQ Group* were decided at the summary judgment stage after consideration of a more complete factual record, rather than on a motion to dismiss. Furthermore, the rationale of these cases has since been rejected by other

courts. *See, e.g., The Associated Press v. All Headline News Corp.*, 608 F. Supp. 2d 454 (S.D.N.Y 2009) (noting that there is no textual support for limiting the DMCA's application to technological processes, and declining to consider legislative history in the face of clear statutory language); *Fox v. Hilebrand*, No. 09-2085, 2009 WL 1977996, at * 3 (C.D. Cal., July 1, 2009) (finding that "the plain language of the statute indicates that the DMCA provision at issue is not limited to copyright notices that are digitally placed on a work").

While the detailed analysis of the legislative history of the DMCA in the cases cited above is not unconvincing, this Court must nonetheless adopt the rational of the court in *All Headline News*. When a statute's language is clear, our role is to enforce that language "'according to its terms.'" *Arlington Central School District Board of Education v. Murphy,* 548 U.S. 291, 296 (2006) (quoting *Hartford Underwriters Insurance Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6 (2000)); *see also Ratzlaf v. United States.*, 510 U.S. 135, 148 (1994) (stating that "we do not resort to legislative history to cloud statutory text that is clear"). Because this Court does not find that the terms of Section 1202 are sufficiently ambiguous such that resort to legislative history is necessary, this Court does not adopt the findings in *Textile Secrets*. Because there is no textual support for Morris's contention that Section 1202 should be limited to technological processes, this Court declines to import such a limitation.[4]

---

[4] The Court also notes that, in its Complaint, Plaintiff alleges that it provided C.L. Thomas with electronic copies of its Architectural Documents as CAD files on a computer-readable disks, and that these electronic documents had copyright management information as set forth in Exhibit C. (Pl. Compl. ¶¶ 22-25.) Plaintiff also alleges that Defendants created the Infringing Architectural Documents by "intentionally removing or altering the copyright management information provided in physical and/or electronic copies" of Plaintiff's Architectural Documents. (*Id.* ¶ 40.) Plaintiff argues that these allegations sufficiently plead use of technological processes in connection with the addition and removal of copyright management

9

### III. MOTION TO COMPEL

The Court also considers the outstanding issue of Morris's Motion to Compel (Doc. No. 55).

#### A. Identification of Copyrightable Elements

Morris asserts that Plaintiff's responses to its requests for production over the course of discovery were deficient. According to Morris, Plaintiff failed to identify the original design elements in the Architectural Documents that were copied by Morris, as distinguished from those elements that are common to all stores (such as a front door entrance, a cashier counter, etc.). In its response to the request, Plaintiff stated that the entire architectural work is copyrightable. Plaintiff maintains that its designs are wholly original, and that Morris improperly copied its architectural works in their entirety.

Morris cites *Intervest Constr., Inc. v. Canterbury Estate Homes, Inc.*, 554 F.3d 914 (11th Cir. 2008) to support its position that it is not the common elements of a convenience store that make Plaintiff's work unique, but rather the placement and arrangement of these common elements. In that case, the court found that, while individual standard features and architectural elements classifiable as ideas or concepts are not themselves copyrightable, an architect's original combination or arrangement of such elements may be. *Id.* at 919. The court reasoned that the definition of an architectural work closely parallels that of a "compilation" under the copyright statute, that is: "[A] work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a

---

information. Although the Court does not rest its holding on this basis, it agrees that these allegations render dismissal of this claim for failure to allege a technological process inappropriate. *Cf. Jacobsen v. Katzer*, 609 F.Supp.2d 925 (N.D. Cal. 2009) (finding dismissal without more discovery inappropriate where there was some technological process engaged to protect the copyright management information).

whole constitutes an original work of authorship." 17 U.S.C. § 101. Accordingly, the court found that "any similarity comparison of the works at issue here must be accomplished at the level of protected expression that is, the *arrangement* and *coordination* of those common elements." *Id.* Thus, argues Morris, Plaintiff should be compelled to identify the specific selection, coordination, or arrangement of elements that are copyrightable, as distinguished from the standard design elements featured in all convenience stores. Morris further points to *Ronald Mayotte & Associates v. MGC Bldg. Co.*, No. 94-72157, 1995 WL 681269, at *3 (E.D. Mich., Sept. 6, 1995). As in this case, the plaintiffs there asserted that the entirety of their architectural design was original. The court denied the plaintiffs' motion for summary judgment, stating that they "failed to indicate what portion of their plans [was] original. As a result, partial summary judgment on the issue of liability is improper, because the extent of the infringement is unknown." *Id.*

A copyright infringement claim requires actionable copying, or copying of constituent elements of the work that are copyrightable. *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 576 (5th Cir. 2003). Actionable copying is determined by two separate inquiries: (1) whether the alleged infringor actually used the copyrighted material in his own work; and (2) whether substantial similarity exists between the copyrighted work and the allegedly infringing work. *Id.* The substantial similarity distinction requires a comparison of the two works to determine whether a layman would view them as substantially similar. *Id.* (citing *Creations Unlimited v. McCain*, 112 F.3d 814, 816 (5th Cir. 1997)). Furthermore, the substantial similarity determination requires comparison not only of the two works' individual elements in isolation, but also of their "overall look

and feel." *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1296 (D.C. Cir. 2002). "[C]onsidering the works as a whole is particularly important because protectible expression may arise through the ways in which artists combine even unprotectible elements." *Id.* In *Sturdza*, the court breaks the substantial similarity inquiry into two steps, the first of which is to identify which aspects of the artist's work, if any, are protectable by copyright. *Sturdza*, 281 F.3d at 1295. The second is to determine whether the alleged infringor's work is substantially similar to these protected elements. *Id.*

The Court notes that Morris's discovery request directly goes to step one of the *Strudza* inquiry, namely the identification of the elements of the architectural works that are subject to copyright protections. Morris, in essence, seeks to compel Plaintiff to resolve this substantive question at the discovery stage. Without ruling in any way upon the merits of Morris's contentions as to what parts of the Architectural Documents are, as a matter of law, subject to protection, this Court finds that Morris's arguments are more appropriate for an examination of this case on the merits. Notably, the cases cited by both parties were decided at the summary judgment stage. Were this Court to grant Morris's Motion and compel Plaintiff to provide the responses that it seeks, it would essentially be asking Plaintiff to concede a substantive element of this case and thereby narrow the field that Defendants must now defend. This Court declines to make this substantive legal determination in the form of a discovery motion. We therefore deny this part of Morris's Motion to Compel.

    **B.**    **Profit Information**

Secondly, in oral argument, Morris raised a concern that it had not yet received information from Plaintiff regarding their per-project profits, information that Morris

claims is essential to its damages model. In response, Plaintiff's counsel indicated that Plaintiff does not maintain a per-project record of its profits, but instead measures profits only on an aggregate annual level. Plaintiff further avers that the revenue and expense information that it has provided Morris should be sufficient, a contention that Morris disputes. Considering that Plaintiff is an established and sophisticated company that has been in the business of architectural designs for many years, this Court finds it highly implausible that it has no record of the amount of profits that it retains from its individual projects. The Court therefore grants Morris's Motion to Compel as to this information. The Court orders Plaintiff to produce information and documents to accurately reflect, or would allow Defendants to accurately calculate, Plaintiff's per-project profits within ten days of entry of this Order.

## IV.   CONCLUSION

This Court hereby finds and holds that Morris's Motion to Dismiss (Doc. No. 60) should be **DENIED**, and its Motion to Compel (Doc. No. 55) should be **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED.**

**SIGNED** this 13th day of November, 2009.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

13